**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amayrani Ramirez,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-21-02163-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Amayrani Ramirez's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of her application for Supplemental Security Income ("SSI") benefits. (Doc. 1.) The appeal is fully briefed (Docs. 17, 20, 21), and the Court now rules.

**I.    BACKGROUND**

**A.    Factual Overview**

Plaintiff alleges that she has been disabled since birth. (*See* Doc. 16-3 at 13, 22.) She has a high school degree and no past relevant work. (*Id.* at 16, 21.) Plaintiff filed her SSI claim on April 29, 2019, alleging disabilities beginning on June 4, 1998, including asthma, cerebral palsy, spastic diplegic gait, and borderline intellectual functioning. (*Id.* at 13, 15.) Her claim was denied initially on August 1, 2019, and upon reconsideration on February 7, 2020. (*Id.* at 13.) Plaintiff subsequently requested a hearing that was held telephonically on April 12, 2021. (*Id.*) On May 7, 2021, the ALJ issued a decision finding Plaintiff not disabled. (*Id.* at 13–23.) The SSA Appeals Council denied Plaintiff's request

for review on October 15, 2021, and adopted the ALJ's decision as the SSA's final decision. (*Id.* at 1–5.) Following this unfavorable decision, Plaintiff filed the present appeal. (Doc. 1.)

### B. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what

[the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### C. The ALJ's Application of the Factors

At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the application date. (Doc. 16-3 at 15.)

At the second step, the ALJ determined that Plaintiff's asthma, cerebral palsy, spastic diplegic gait, and borderline intellectual functioning constituted severe impairments under 20 C.F.R. § 416.920(c). (*Id.*) The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.* at 15–16.)

At the third step, the ALJ determined that neither Plaintiff's impairments nor a combination of Plaintiff's impairments met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16–17.) After evaluating the record, the ALJ determined Plaintiff's RFC:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs; she can frequently balance, stoop, kneel, and crouch; she can work with occasional exposure to pulmonary irritants such as fumes, odors, dust, gases, etc.; can tolerate occasional exposure to poorly ventilated areas and non-weather-related extreme heat; she can work with no exposure to dangerous machinery or

> unprotected heights; she can perform work involving understanding, remembering and carrying out simple instructions, consistent with a GED reasoning level of 2 or below; she can perform work with occasional routine changes in the work setting; she can perform work not involving fast paced production quotas; she can have minimal interpersonal interaction with the public and occasional interaction with coworkers.

(*Id.* at 17.)

At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 21.)

At the fifth step, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, a significant number of jobs exist in the national economy that she can perform. (*Id.* at 22.) The ALJ reached this conclusion based on the testimony of a vocational expert ("VE") who testified that Plaintiff could work as a racker, small products assembler II, and bench assembler. (*Id.*) The requirements of these jobs are described in the Dictionary of Occupational Titles ("DOT"). (*Id.*) The VE's testimony was based on hypotheticals provided by the ALJ and based on Plaintiff's RFC. (*Id.*) Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of SSI from the alleged onset date through May 7, 2021. (*Id.* at 23.)

## II.     LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws

inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises three issues on appeal: (1) "[t]he ALJ failed to consider [Plaintiff's] cognitive disorder under [l]isting 12.05[B] – Intellectual Disorder" at step three, (2) "[t]he ALJ failed to properly evaluate the mental health opinion of Michael Rabara, Psy.D," and (3) the Court should remand for an award of benefits or a new hearing. (Doc. 17 at 10, 15; *id.* at 10–21.)

### A. The ALJ's Step Three Analysis

Plaintiff asserts that she "meets or medically equals [l]isting 12.05B as of April 29, 2019, her SSI filing date." (Doc. 17 at 14.) Thus, she argues, the ALJ failing to consider her cognitive disorder under listing 12.05B was error. (*Id.* at 10–14.) The Commissioner argues that the ALJ properly evaluated Plaintiff's mental impairment and that the ALJ's step three conclusions are supported by substantial evidence. (Doc. 20 at 4–10.) In the alternative, the Commissioner argues that any error the ALJ committed was harmless because considering listing 12.05B would not have changed the ALJ's analysis. (*Id.* at 9–10.)

The ALJ closely examined the record at step three when determining that Plaintiff did not have a sufficiently severe mental impairment to be considered disabled:

> The severity of [Plaintiff's] mental impairment does not meet or medically equal the criteria of listing 12.11. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in one extreme

> limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, [Plaintiff] has a moderate limitation. She has a specific learning disorder in reading, written comprehension, and mathematics. She also scored in the borderline range of intelligence with a FSIQ of 73 and GAI of 76, and her working memory scores were in the borderline to low-average range. On consultative exam, [Plaintiff] slurred her speech at times. However, she graduated high school under an IEP (Independent Education Plan) for her learning disorder. She displayed limited insight on consultative exam. In interacting with others, [Plaintiff] has a moderate limitation. Her IEP indicates she gets along well with peers, teachers, and worksite supervisors. She has interacted appropriately with medical personnel of record and she did so at the hearing. She sometimes goes to the movies with friends or family members. At the physical consultative examination, she avoided eye contact. At times, her speech is noted to be slurred. With regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation. She can complete interviews in a timely manner and without unnecessary breaks. On formal testing, she was serious and cooperative. She can play video games for extended periods, including at night. As for adapting or managing oneself, [Plaintiff] has experienced a mild limitation. She is independent in self-care and personal hygiene, and she is able to advocate for herself. She does not drive but can take public transportation according to her February of 2018 IEP[]. She can make simple meals and shop in stores.
>
> Because [Plaintiff's] mental impairment does not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(Doc. 16-3 at 16–17 (internal citations omitted).)

During the five-step sequential evaluation discussed above, when evaluating adult

mental impairment severity, the ALJ must rate "the degree of functional limitation resulting from the impairment" of the claimant in four broad areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). The claimant's degree of functional limitation is based on the extent to which her impairment interferes with her ability "to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 416.920a(c)(2). When rating the claimant's degree of limitation in the above four areas, the ALJ uses the following five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 416.920a(c)(4). Once the ALJ rates the claimant's degree of functional limitation, the ALJ then determines the severity of the claimant's mental impairment(s). *Id.* § 416.920a(d). If the ALJ finds the degrees of limitation are "none" or "mild," he will generally conclude the claimant's impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 416.920a(d)(2). If the ALJ finds there are severe mental impairments that either do not meet or are not equivalent in severity to any mental disorder listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he will then assess the claimant's RFC. *Id.* §§ 416.920a(d)(3), 416.925, 416.926.

The ALJ must incorporate relevant findings and conclusions based on the above procedure in his written decision. *Id.* § 416.920a(e)(4). The ALJ's written decision must "include the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* Additionally, the written decision must include a specific finding regarding the degree of limitation in each of the four functional areas described above. *Id.*

Here, despite Plaintiff's protests, even if the ALJ erred by not explicitly naming and analyzing listing 12.05B; it was harmless error. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). By Plaintiff's own admission, to find Plaintiff disabled at step three in a listing 12.05B analysis, the ALJ would need to find "significant deficits in adaptive

functioning currently manifested by extreme limitation of one, or marked limitation of two, of the" four areas of mental functioning that the ALJ examined. (Doc. 17 at 10–11.) But the ALJ found only moderate and mild limitations in the four areas examined. Thus, if the ALJ's analysis in the four areas of mental functioning is supported by substantial evidence, then the ALJ's error was harmless because omitting the listing 12.05B analysis had no bearing on the final nondisability determination. *See Marsh*, 792 F.3d at 1173 ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006))).

Having reviewed the record, the Court finds that the ALJ's conclusions regarding Plaintiff's mild limitation in adapting or managing oneself and moderate limitations in understanding, remembering or applying information; interacting with others; and concentrating, persisting or maintaining pace are supported by substantial evidence. For example, much of the evidence in the record indicates that Plaintiff's limitations are, at worst, moderate: she graduated high school with an IEP; her IEP, the fact that she attends movies with friends and family, and her behavior at the hearing indicate that she is capable of interacting with others; she can complete interviews in a timely manner and without unnecessary breaks, she was serious and cooperative on formal testing, and she can play video games for extended periods of time, even at night; and, although she cannot drive, Plaintiff independently maintains her self-care, performs personal hygiene tasks, can advocate for herself, can take public transportation, make simple meals, and shop in stores. (Doc 16-3 at 16–17; Doc. 16-8 at 241–87; Doc. 16-9 at 367–73, 425–32.)

Because a substantial portion of the record supports the ALJ's analysis in the four areas of mental functioning, the Court finds that the ALJ did not err when analyzing the Plaintiff's condition in these four areas. The Court also finds that a reasonable person examining the evidence could draw the same conclusions. The fact that the evidence in the record could be interpreted differently has no effect on this Court's ruling. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving

conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). Based on the foregoing, the Court finds that the ALJ's analysis in the four areas of mental functioning is supported by substantial evidence in the record. Therefore, if the ALJ erred by not performing a listing 12.05B analysis, the ALJ's error was harmless and remand is not warranted. *Marsh*, 792 F.3d at 1173.

**B.   Michael Rabara's Mental Health Opinion**

Plaintiff argues that the ALJ improperly evaluated Dr. Rabara's medical opinion regarding her mental health. (Doc. 17 at 15–21; Doc. 21 at 1–6.) The Commissioner argues that "[t]he ALJ's evaluation of the medical opinion evidence is supported by substantial evidence." (Doc. 20 at 10; *id.* at 10–15.)

Having reviewed the record, the ALJ determined the persuasive value of Dr. Rabara's medical opinion:

> Dr. Rabara completed a consultative psychological evaluation on July 24, 2019 and diagnosed borderline intellectual functioning. [Plaintiff] cited cerebral palsy as her primary impediment to work and did not assert mental disability. [Plaintiff] knew the correct year but not the month or date, and she knew her birthday but not her social security number. She knew her address and phone number but was unaware of any current events. [Plaintiff] did not appear to be highly motivated or interested, but she was compliant with the interview and testing. Dr. Rabara stated she was serious and compliant with the exam and seemed to perform to her ability. He opined [that Plaintiff] can remember simple instructions but will have difficulty making simple decisions, carrying [out] detailed instructions, sustain[ing] an ordinary routine without special supervision, or complet[ing] a normal workday at a consistent pace. He noted she will have difficulty maintaining appropriate hygiene but noted she admitted she brushes her teeth inconsistently. In addition, Dr. Rabara said that due to limited cognitive ability, [Plaintiff] would have difficulty responding appropriately to work setting changes and setting realistic goals independently. His opinion is somewhat persuasive based on the objective nature of his exam and his consistency

>with the greater record regarding [Plaintiff's] mental impairment. However, the greater medical record available at the hearing level shows that [Plaintiff] does not have any mental limitations in excess of those outlined in the RFC. The limitations given by Dr. Rabara are somewhat vague, including his use of "special supervision," which is not defined. Dr. Rabara's exam results are persuasive to the degree they support the RFC reached herein rather than [Plaintiff's] allegations.

(Doc. 16-3 at 20–21 (internal citations omitted).)

The law previously distinguished between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was known as the "treating physician rule." *See Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). "In March of 2017, [t]he Social Security Administration amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.*

Furthermore, the ALJ will consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources. *Alonzo*, 2020 WL 1000024, at *3. Under the new regulations, the ALJ must consider and explain how well the medical evidence supports the medical opinion and how consistent the medical opinion is with the record, and may, but is not required to, explain how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. § 404.1520c(b)(3).

"When the evidence before the ALJ is subject to more than one rational

interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Although it was debated for years, recently, the Ninth Circuit definitively ruled that the "specific and legitimate" standard is not the law in Social Security cases where the revised regulations apply. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Specifically, the Ninth Circuit in *Woods* determined that

> [t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with [Plaintiff]. Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources— contrary to the revised regulations.

*Id.* (quotations and internal citations omitted). Thus, an ALJ need not give specific and legitimate reasons for not crediting the medical opinion of a treating physician. *Id.* at 791.

Substantial evidence supports the persuasive weight that the ALJ assigned Dr. Rabara's medical opinion. (Doc. 16-3 at 20–21); *see Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Generally speaking, the ALJ found that Dr. Rabara's medical opinion relied on ill-defined and vague terms such as "special supervision" when laying out what he believed were Plaintiff's mental limitations. (Doc. 16-3 at 21.) The ALJ also opined that Dr. Rabara's

conclusions conflicted with the extensive medical record which included medical opinions by Dr. Berger, Dr. Cunningham, Dr. Salk, Dr. Waldman, Dr. Quinones, Dr. Mirza, and Dr. Pavese. (*Id.* at 19–21.) Specifically, Dr. Salk and Dr. Waldman are the state agency mental health consultants who opined on Plaintiff's mental health status. (*Id.* at 20.) The ALJ found their medical opinions "mostly persuasive" because they were consistent with the record. (*Id.*) In addition to medical opinions, the medical record includes documentation of many of Plaintiff's activities and accomplishments—doctors considered that evidence when determining how limited Plaintiff is. *Supra* Section III.A. For example, Plaintiff graduated high school, attends movies with friends and family, can interact with others (such as at the hearing), can complete interviews in a timely manner and without unnecessary breaks, was serious and cooperative on formal testing, plays video games, independently maintains her self-care, performs personal hygiene tasks, takes public transportation, makes simple meals, shops in stores, and can advocate for herself. *Id.*

Using the standard set forth at 20 C.F.R. § 404.1520c, the ALJ determined the consistency and supportability of Dr. Rabara's medical opinion. Regarding consistency, the ALJ noted that Dr. Rabara's "opinion is somewhat persuasive based on the objective nature of his exam and his consistency with the greater record regarding [Plaintiff's] mental impairment." (Doc. 16-3 at 21.) Regarding supportability, the ALJ noted that "the greater medical record available at the hearing level shows that [Plaintiff] does not have any mental limitations in excess of those outlined in the RFC." (*Id.*) The ALJ may not have expressly used words like "supportability" or "support," but this statement is an analysis and explanation of how much the record supports Dr. Rabara's medical opinion. Thus, the ALJ discussed and considered the consistency and supportability of Dr. Rabara's medical opinion when determining its persuasive value. The Court finds that a reasonable person examining the evidence could draw the same conclusions as the ALJ. The fact that the evidence in the record could be interpreted differently has no effect on this Court's ruling. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold

the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). Thus, the ALJ considering Dr. Rabara's medical opinion "somewhat persuasive" was not error. (Doc. 16-3 at 21.)

Alternatively, the Court finds that, if the ALJ erred by not explicitly articulating Dr. Rabara's medical opinion's supportability, such error was harmless. *See Marsh*, 792 F.3d at 1172. Dr. Rabara's medical opinion was considered only "somewhat persuasive" because many of his conclusions were not supported by the record. (*See* Doc. 16-3 at 21.) Given this, arguing that the ALJ could have simultaneously opined that those same conclusions were supported by the record is logically impossible. Thus, it follows that, if the ALJ had felt it necessary to explicitly articulate Dr. Rabara's medical opinion's supportability, then the ALJ would have found that it was not supported by the record. Thus, an explicit finding via the use of "magic language" would have had no effect on the final RFC determination. Therefore, if the ALJ erred, it was harmless. *See Marsh*, 792 F.3d at 1173 ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" (quoting *Stout*, 454 F.3d at 1056)).

### C. Further Proceedings

Finally, Plaintiff requests a remand for further proceedings or a calculation of benefits pursuant to the credit-as-true rule. (*See* Doc. 17 at 21.) But the Court is affirming the ALJ's decision; therefore, the Court denies Plaintiff's request for a remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (A direct award of benefits is proper "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits.").

/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 16th day of August, 2022.

James A. Teilborg
Senior United States District Judge